UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
GARY ANTONIO WALKER,

00 CR 0623 (SJ)
03 CV 5821 (SJ)

Petitioner,

**MEMORANDUM**
**AND ORDER**

- against -

UNITED STATES OF AMERICA,

Respondent.
-------------------------------------------------------X
APPEARANCES

LABE M. RICHMAN, ESQ.
305 Broadway, Suite 100
New York, New York 10007
Attorney for Petitioner

ROSLYNN R. MAUSKOPF, ESQ.
United States Attorney
One Pierrepont Plaza, 15th Floor
Brooklyn, New York 11201
By:     John J. Durham, Esq.
Attorney for Respondent


JOHNSON, Senior District Judge:

Before the Court is a motion to vacate, set aside, or correct a sentence

pursuant to 28 U.S.C. § 2255 (the "§ 2255 Motion"), brought by Gary Antonio

Walker ("Petitioner"). For the reasons stated below, Petitioner's § 2255 Motion is

GRANTED.

1

P-049

## BACKGROUND[1]

Petitioner is seeking to challenge a judgment, which followed a plea of

guilty,[2] convicting Petitioner of illegal re-entry into the United States, in violation

of 8 U.S.C. § 1326, and sentencing Petitioner principally to 105 months of

incarceration. In his § 2255 Motion, filed on November 15, 2003, Petitioner

specifically challenges his sentence on the grounds that counsel for his plea and

sentencing, Bernard Alan Seidler, Esq. ("Counsel"), provided ineffective assistance

of counsel by failing during Petitioner's sentencing phase: (1) to argue where

within the Federal Sentencing Guidelines (the "Guidelines") Petitioner's sentence

should fall; (2) to point out, after the Court sentenced Petitioner to 105 months of

imprisonment, that the sentence represented the top of the Guidelines range; (3) to

mention to the Court that a sentence of 105 months was more jail time than

necessary to achieve the purposes of sentencing for a non-violent offense; (4) to

remind the Court that Petitioner did not receive all three points for acceptance of

responsibility; (5) to note that Petitioner deserved the third acceptance point; and

---

[1]The facts and procedural history of this case, as well as the underlying criminal action, are presumed to be known by the parties and will not be recounted here except as relevant to this decision.

[2]With his consent, Petitioner's plea of guilty was taken by Magistrate Judge Robert M. Levy on November 16, 2001. See United States v. Walker, 00 CR 0623, Entry No. 47. At Petitioner's sentencing, this Court accepted his plea of guilty. See id., Entry No. 51. Petitioner's plea, however, was not pursuant to a plea agreement.

2

P-049

(6) to seek a departure based on the fact that Petitioner was detained pursuant to an immigration hold prior to his federal incarceration.[3] Additionally, Petitioner claims he is entitled to be re-sentenced because Counsel was ineffective for failing to file a notice of appeal on Petitioner's behalf.[4]

On July 12, 2006, the Court held an evidentiary hearing, with a focus on the facts relating to the notice of appeal claim. See Walker, 03 CV 5821, Entry Dated July 12, 2006. During the hearing, Petitioner called Counsel, who testified that he advised Petitioner of his right to appeal during a meeting at some point before Petitioner's sentencing. (§ 2255 Mot. Hr'g Tr. 16, July 12, 2006.)[5] Counsel testified that this meeting occurred at the Metropolitan Detention Center ("MDC")

---

[3] In his § 2255 Motion, Petitioner also asserted that the Court violated Rule 32(i)(1)(A) of the Federal Rules of Criminal Procedure by allegedly not inquiring at the time of Petitioner's sentencing whether he and Counsel had a chance to read and discuss the presentence report. However, after recognizing that the sentencing record demonstrated the inaccuracy of this allegation, and admitting that the Court had, in fact, inquired at sentencing as to whether Petitioner and Counsel had read and discussed the presentence report, Petitioner withdrew this particular claim. (See Walker, 03 CV 5821, Entry No. 25.)

[4] In a letter dated July 20, 2004, Petitioner requested that this Court also consider the impact, if any, on this case of Blakely v. Washington, 542 U.S. 296 (2004), a case in which the Supreme Court, in an extension of the doctrine originally announced in Apprendi v. New Jersey, 530 U.S. 466 (2000), struck down the Washington state sentencing guidelines for being in violation of the right to a jury trial as guaranteed under the Sixth Amendment. (See United States v. Walker, 03 CV 5821, Entry No. 12.) In an order dated July 29, 2004, the Court informed the parties it would consider this issue along with the Court's consideration of the other claims Petitioner has pending. (See id., Entry No. 11 at 2.) In a filing dated _____, Petitioner also noted the potential applicability of United States v. Booker, 543 U.S. 220 (2005), which extended the rationale of Blakely to the Guidelines and would thus be the more applicable case to Petitioner's case. (See Walker, 03 CV 5821, Entry No. ___.)

[5] The underlying theme Petitioner's current counsel sought to establish during the hearing was that Counsel's alleged ineffectiveness resulted from Petitioner never paying the remainder of the fee he owed Counsel. (See, e.g., Hr'g Tr. 4.)

3

P-049

in Brooklyn, where Petitioner was incarcerated at that time. (Hr'g Tr. 17.)

Counsel also testified that, while he informed Petitioner of his right to appeal, that

Petitioner never mentioned anything to Counsel about wishing to appeal, either

during the meeting at MDC or anytime thereafter. (Hr'g Tr. 17.) When asked if

Counsel had asked Petitioner, after being sentenced to 105 months of incarceration,

if he wished to appeal, Counsel responded, "Probably not." (Hr'g Tr. 17.)

Counsel acknowledged that 105 months was "a lot of time" for an illegal re-entry

plea, but added that he believed the sentence was "fueled, in a large measure, by

[Petitioner's] criminal history." (Hr'g Tr. 18.) When asked if he thought the

amount of time a defendant received would affect his decision regarding whether

to appeal or not, Counsel responded, "Probably." (Hr'g Tr. 19.) Counsel stated

that neither Petitioner nor anyone on his behalf requested that Counsel file a notice

of appeal; thus, Counsel did not do so. (Hr'g Tr. 21, 32.) Counsel said that his

regular practice is that, if a client gives Counsel a sense prior to sentencing that the

client wishes to appeal, after the sentencing Counsel will then go see the client to

discuss the appeal; otherwise, his regular practice is not to approach a client after

sentencing regarding appeal. (Hr'g Tr. 35.)

Petitioner also testified during the hearing, not surprisingly providing a

different version of events pertaining to the appeal issue. According to Petitioner,

during their meeting at MDC, Petitioner told Counsel that if the case did not

4

proceed according to Counsel's predictions, "there will be [sic] appeal." (Hr'g Tr. 40.) Petitioner said Counsel responded by saying, " 'Yes, but basically you won't have to worry about that.' " (Hr'g Tr. 40.) Petitioner also stated that after his sentencing, he was unable to reach Counsel. (Hr'g Tr. 42.) Petitioner testified that he received permission to make a phone call and tried to phone Counsel but only reached Counsel's answering service. (Hr'g Tr. 42.)[6] Petitioner admitted that he never attempted to reach Counsel by mail. (Hr'g Tr. 47.) At the conclusion, Petitioner said he never met with Counsel at MDC to discuss Petitioner's appellate rights. (Hr'g Tr. 46.)[7] Despite the inconsistencies between the testimony of Petitioner and Counsel, it is undisputed that Counsel did not meet with or contact Petitioner following sentencing. It is also undisputed not only that Counsel did not file a notice of appeal, but also that at no time did Petitioner direct Counsel to file (or not to file) an appeal on Petitioner's behalf.[8]

---

[6]Counsel testified that during that time he did have an answering service to cover his phone lines when he was not in his office. (Hr'g Tr. 34.) Though Petitioner was not asked and otherwise did not say whether or not he left a message, Counsel testified that he did not get a message from Petitioner. (Hr'g Tr. 34.)

[7]Contrary to the position he took at his sentencing, during the hearing Petitioner stated he never met with Counsel to discuss the presentence report. (Hr'g Tr. 46.) This inconsistency, while certainly relevant to the issue of Petitioner's overall credibility, is irrelevant to the facts regarding the notice of appeal issue.

[8]Though not questioned about it during the evidentiary hearing, Petitioner stated in his Declaration in Support of Motion that, after he was designated to his permanent place of incarceration, he was attacked and, for his own protection, was segregated from the general prison population. (Pet. Dec. Supp. Mot. ¶ 4.) He then tried without success to file, *pro se*, a late notice of appeal. (Pet. Dec. Supp. Mot. ¶ 4.) He attached documents in support of this last assertion. (See § 2255 Motion Attached Docs. 1-3.)

P-049

Petitioner requests that, in light of Counsel's alleged substandard and prejudicial representation, the Court vacate Petitioner's criminal judgment, and either re-sentence him – or, in the alternative, re-enter the judgment – so that he may timely file a direct appeal.

## DISCUSSION

### I. Failure to File a Notice of Appeal

#### A. *Legal Standard*

In <u>Roe v. Flores-Ortega</u>, 528 U.S. 470 (2000), the Supreme Court held, in part, that courts should analyze claims of ineffective assistance of counsel for failing to file a notice of appeal under the familiar two-step test articulated in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). <u>Flores-Ortega</u>, 528 U.S. at 477-78. <u>See</u> <u>also</u> <u>Sarroca v. United States</u>, 250 F.3d 785, 786 (2d Cir. 2001).

According to <u>Strickland</u>, first a petitioner "must show that counsel's representation fell below an objective standard of reasonableness." <u>Strickland</u>, 466 U.S. at 688. When evaluating counsel's performance, a court must examine the circumstances of counsel's conduct from counsel's perspective at the time rather than from hindsight. <u>Id.</u> at 689. Moreover, in order to satisfy the first prong of <u>Strickland</u>, a petitioner must overcome the strong presumption that the challenged action or inaction may be considered reasonable strategy. <u>Id.</u> Second, a petitioner

6

must show that counsel's performance prejudiced his or her defense. Id. at 692.

The Supreme Court in Flores-Ortega went on to apply Strickland to the situation where an attorney fails to file a notice of appeal. When evaluating counsel's performance in that context, the Supreme Court held that "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Flores-Ortega, 528 U.S. at 480. To satisfy the latter factor, a petitioner need not have expressly directed counsel to file an appeal, as "a more basic demonstration of interest in appealing meets the test." Sarroca, 250 F.3d at 787. In determining whether counsel had a duty to consult, "courts must take into account all the information counsel knew or should have known." Flores-Ortega, 528 U.S. at 480 (citation omitted).[9]

---

[9]The Supreme Court went on to add that:

> Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings. Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights. Only by considering all relevant factors in a given case can a court properly determine whether a rational defendant would have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an interest in an appeal . . . . We expect that courts evaluating the reasonableness of counsel's performance using

7

P-049

If counsel had a duty to consult, courts must also assess "whether counsel in fact consulted with the defendant about an appeal." Id. at 479. To "consult" in this context means "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." Id. Counsel who fails to file a notice of appeal after not fulfilling a duty to consult will have provided constitutionally deficient performance. See id. at 478-80.

However, deficient performance alone is insufficient to warrant relief. A petitioner must still show prejudice from counsel's substandard performance. Id. at 481. To do so in this context, a petitioner "must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." Id. at 484. Of course, "[a]s with all applications of the Strickland test, the question whether a given defendant has made the requisite showing will turn on the facts of a particular case . . . . Nonetheless, evidence that there were nonfrivolous grounds for appeal or that the defendant in question promptly expressed a desire to appeal will often be highly relevant in making this determination." Id. at 485 (internal citation omitted).

If a petitioner can satisfy both parts of the test, namely that "counsel's

---

the inquiry we have described will find, in the vast majority of cases, that counsel had a duty to consult with the defendant about an appeal.

Id. at 481-82.

8

P-049

constitutionally deficient performance deprive[d] a [petitioner] of an appeal that he otherwise would have taken, the [petitioner] has made out a successful ineffective assistance of counsel claim entitling him to an appeal." Id.

### B. Counsel's Representation of Petitioner

#### 1. Performance

As stated above, to show Counsel had a duty to consult, Petitioner must show either that a reasonable defendant would have wanted to appeal or that Petitioner himself communicated such an interest to Counsel. Id. at 480. The Court need not consider the latter as a possibility because it concludes the former has been satisfied in this case.

In reaching this conclusion, the Court has considered the factors mentioned in Flores-Ortega. Specifically, the Court notes that, while Petitioner did plead guilty, which the Supreme Court stated "may indicate that the defendant seeks an end to judicial proceedings," id., Petitioner is not seeking to challenge the conviction that resulted from his plea. Rather, he is seeking to appeal his sentence, a motivation that is indistinguishable between defendants who plead guilty and defendants who are convicted following trial.

Moreover, and of similar importance here, Petitioner did not plead guilty pursuant to a plea agreement. As a result, other than likely expecting that his guilty

9

plea would entitle him to points for acceptance of responsibility, Petitioner did not

bargain for a particular sentence or sentencing range. Additionally, the absence of

a plea agreement means Petitioner did not agree to waive any appeal, as is usually

required when a guilty plea is pursuant to a plea agreement. A rational defendant

similarly situated, having opted not to bargain with the government over a

particular sentence (or range), would have placed all his hope with the judge to

hand down a relatively lenient sentence. If that did not happen, a rational

defendant in that situation would want to appeal, even if – as the Court believes

here – the grounds of that appeal may be meritless. This situation falls within the

"vast majority of cases," where courts conclude that "counsel had a duty to consult

with the defendant about an appeal." Id. at 481. Accordingly, Counsel in this case

had such a duty to consult with Petitioner about his appeal.

Based on the Supreme Court's definition of "consult," it is clear Counsel

did not fulfill that duty. While the record shows he did discuss Petitioner's appeal

rights with him, it is undisputed that Counsel did not "make a reasonable effort to

discover [Petitioner's] wishes" regarding appeal. Id. at 478. Counsel admitted his

practice – which he said he followed in this case – is not to contact every client

post-sentencing to discern whether that person wishes to appeal. According to

Counsel, only if a client pre-sentencing showed interest in appealing, would

Counsel then pay a visit post-sentencing. While that approach may have been

P-049

acceptable before <u>Flores-Ortega</u>, the same cannot be said after it.[10] The record makes clear that Counsel made no affirmative effort to discovery Petitioner's wishes with respect to appeal. And, making no effort in this regard is not reasonable, especially post-sentencing, regardless of how Petitioner prior to sentencing may have responded to the idea of appealing. Because Counsel's duty to consult went unfulfilled, his performance was constitutionally deficient.

### 2. Prejudice

Of course, Petitioner must still establish prejudice, which he does – barely. Petitioner has made the requisite showing that, had Counsel consulted with him, Petitioner would have appealed. The Court reaches this conclusion based on the specific facts of this case. In particular, there is no doubt that after the sentencing Petitioner still owed Counsel money. Despite that fact, he did try to reach out to Counsel one time by telephone. If Petitioner truly had no interest in pursuing an appeal, he had virtually no incentive to reach out to Counsel at this point. And, while the Court did not find Petitioner to be an entirely believable witness, the Court did find credible Petitioner's testimony that he tried to call Counsel but was only able to reach his answering service. This particular aspect of Petitioner's

---

[10]In fact, even limiting it to just one attempt to discern a defendant's desires with respect to appeal may not be advisable, considering that "[t]he better practice is for counsel routinely to consult with the defendant about an appeal." <u>Id.</u> at 471.

11

testimony is believable because Counsel himself acknowledged he had an answering service at this time.[11] Moreover, during the same general time period, Petitioner apparently did try to file, *pro se*, a late notice of appeal. Taken together, and in light of the larger interests implicated here, the Court concludes Petitioner has shown he would have appealed were it not for Counsel's failure to consult.[12]

While the Court is not convinced the claims Petitioner wishes to raise on direct appeal have merit, Petitioner nevertheless will have his opportunity to seek direct appeal with the Second Circuit. The Court will vacate Petitioner's judgment and re-sentence Petitioner. See Garcia v. United States, 278 F.3d 134, 138 (2d Cir. 2002) ("The district court shall either (1) enter a new judgment imposing the same sentence in open court with defense counsel present, . . . or (2) if the district court discerns any useful purpose in further considering the sentence, resentence the

---

[11]Even though Counsel said he never received a message from Petitioner, Petitioner never claimed to have left one.

[12]The Court is not saying that Petitioner overwhelmingly satisfied the two-part Strickland/Flores-Ortega test. Far from it. In the end, though, the tipping point was the intersection of the precious right to effective assistance of counsel embodied in the Sixth Amendment and the particular judicial proceeding – direct appeal – that Petitioner seeks to avail himself of with his § 2255 Motion. The implication of these interests, together with the facts of this case, requires the restoration of the opportunity to seek direct appeal, especially considering that Second Circuit "precedents take very seriously the need to make sure that defendants are not unfairly deprived of the opportunity to appeal." Campusano v. United States, 442 F.3d 770, 775 (2d Cir. 2006). This is so even if the appeal itself turns out to have been without merit. Id. at 776 (noting, in the context of when a petitioner's attorney failed to file a requested notice of appeal even after the petitioner had pled guilty pursuant to a plea agreement containing a waiver of appeal, that petitioners "who establish ineffective assistance may indeed go on to file frivolous appeals, but such appeals will be promptly dismissed").

12

P-049

defendant.").[13]

## CONCLUSION

For the reasons stated above, Petitioner's § 2255 Motion is GRANTED.[14]

The parties shall appear before the Court on September 29, 2006, at 9:30 a.m.,

when the Court will (1) vacate Petitioner's criminal judgment, 00 CR 0623, Entry

No. 52, and, after hearing from the parties, (2) re-sentence Petitioner. The Clerk is

directed to close this case (03 CV 5821).


SO ORDERED.

September ___, 2006
Brooklyn, New York

_____
Senior U.S.D.J.


cc:     Bernard Alan Seidler, Esq.
        580 Broadway
        New York, New York 10012

---

[13]The parties are on notice that, while the Court has decided Petitioner is entitled to be heard again and then to be re-sentenced, this decision does not mean that he is automatically entitled to a *different* sentence than the one he previous received.

[14]Permitting Petitioner to be heard once again regarding his sentence, and then to be re-sentenced, obviates the need for this Court to consider the remainder of Petitioner's ineffective assistance of counsel claims.

P-049